UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
AMS GROUP, Donald Greaves, Saint
Clair Jackson,

                       Plaintiffs,                Civil Action No.:
                                          07 CIV 6988 (LTS)

        - against -

                                            (Electronically Filed)

JP MORGAN CHASE,

                       Defendant.
-------------------------------------------------------------------x


## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ............................................................................................... 1

**STATEMENT OF FACTS** ...................................................................................................... 3

**ARGUMENT** ............................................................................................................................ 5

    **POINT I** ........................................................................................................................... 5

        **PLAINTIFFS' CLAIMS UNDER THE ECOA ARE
BOTH TIME BARRED AND INSUFFICIENT
AS A MATTER OF LAW.**

    **POINT II** .......................................................................................................................... 9

        **PLAINTIFFS' ALLEGED TORTIOUS
INTEREFERENCE CLAIM IS INSUFFICIENT
AND BARRED BY THE APPLICABLE
THREE-YEAR STATUTE OF LIMITATIONS**

    **POINT III** ...................................................................................................................... 10

        **DONALD GREAVES AND SAINT CLAIR JACKSON ARE
IMPROPER PARTIES BECAUSE INDIVIDUALS DO NOT
HAVE STANDING TO ASSERT CLAIMS ON BEHALF
OF A CORPORATION.**

**CONCLUSION** ...................................................................................................................... 11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
AMS GROUP, Donald Greaves, Saint
Clair Jackson,

                       Plaintiffs,                  Civil Action No.:
                                                    07 CIV 6988 (LTS)

             - against -

                                                      (Electronically Filed)

JP MORGAN CHASE,

                       Defendant.
-------------------------------------------------------------------x

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT

      This memorandum of law is respectfully submitted on behalf of defendant, JPMorgan Chase Bank, N.A. s/h/a JPMorgan Chase ("Chase"), in support of its motion to dismiss the Verified Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that (a) plaintiffs' Equal Credit Opportunity Act ("ECOA"), 15 U.S.C.S. § 1691 et seq., claim is barred by the statute's two-year statute of limitations and is insufficiently pleaded, (b) plaintiffs' tortious interference claim is insufficient and barred by the applicable three-year statute of limitations, and (c) individual plaintiffs, Donald Greaves and Saint Clair Jackson, do not have standing to assert claims for alleged wrongs to the corporation and are, therefore, improper parties.

      Plaintiffs' claims under the ECOA and for tortious interference accrued more than three years before this action was filed in August 2007 and are, therefore, time barred.

## PRELIMINARY STATEMENT

      In March 2004, Donald C. Greaves, on behalf of plaintiff AMS Group ("AMS"), wrote to

William B. Harrison, Jr., the Chairman and Chief Executive Officer of JPMorgan Chase & Co. ("Chase & Co."), the holding company for Chase, proposing that Chase (presumably JPMorgan Chase Bank, N.A.) make a $135 million loan to AMS for the purchase of an oil refinery. After receiving the letter, a Chase & Co. Vice President contacted Mr. Greaves and investigated public records regarding AMS. Chase & Co. found that AMS had no assets, was not licensed to do business in New York State, and that the telephone number and address provided for the company could not be confirmed. Chase & Co., therefore, advised AMS, which had never submitted a Chase loan application that the bank declined to accept an application for such a substantial loan.

In April 2004, with the authorization of Mr. Greaves, Mr. Scott Booth, as a representative of the refinery, contacted Chase & Co. regarding the proposed loan. Plaintiffs allege that Chase & Co. stated to Mr. Booth that Chase was not interested in pursuing the loan. Plaintiffs do not allege that Chase & Co. had any other contact with the refinery. On April 28, 2004, Mr. Booth notified AMS that the refinery had executed an exclusive agreement with another potential buyer and that it was no longer pursuing the transaction with AMS.

AMS filed a complaint with the Federal Reserve Bank of New York (the "Federal Reserve") in May 2004, alleging violations of the Community Reinvestment Act and ECOA. On AMS's behalf, the Federal Reserve asked Chase & Co. to respond to the complaint filed by AMS. Chase & Co. responded on July 16, 2004, that credit was declined because: (a) a loan of the size requested would require substantial assets, (b) Chase & Co. reviewed public records, including Dun & Bradstreet, and found no information or listing of AMS, (c) AMS was not licensed to do business in New York State, and (d) the address and telephone number provided by AMS could not be confirmed. The Federal Reserve concluded that Chase & Co. acted upon

"financial nondiscriminatory criteria and standards for creditworthiness" and notified AMS of its findings by letter dated July 26, 2004.

Plaintiffs then waited more than three years to file this action alleging violations of the ECOA and tortious interference. As set forth below, plaintiffs' claim for violation of the ECOA is barred by the statute's two-year statute of limitations and is insufficient as a matter of law. Plaintiffs alleged tortious interference claim is insufficient and barred by the applicable three-year statute of limitations. Finally, individuals do not have standing to assert claims on behalf of the corporation. Therefore, Donald Greaves and Saint Clair Jackson are improper parties.

## STATEMENT OF FACTS

Plaintiffs allege that AMS was formed in 2003 as a limited liability company in Wyoming and, in 2004, had no assets or income producing operations.[1] On or about March 16, 2004, Mr. Greaves, on behalf of AMS, wrote a letter to Mr. William B. Harrison, Jr., the Chairman and Chief Executive Officer of Chase & Co., the holding company for Chase Bank. Mr. Greaves letter was a request that Chase consider lending AMS Group $135 million so that AMS Group could purchase and reconstruct a Texas oil refinery.[2] Mr. Greaves's letter to Mr. Harrison was referred to Mr. James Nicholas, Vice President of Auditing of Chase & Co..[3] Mr. Nicholas contacted Mr. Greaves, AMS's principal, for additional information about the refinery and requested loan.[4]

By letter dated April 23, 2004, Mr. Greaves directed Mr. Scott Booth of Park Avenue Equity Management LLC, a representative of the refinery, to contact Mr. Nicholas regarding the

---

1 See Exhibit A, para. 7; Exhibit C, para. 24.
2 See Exhibit A, para. 16; Exhibit B.
3 See Exhibit A, para. 17; Exhibit C, para. 9.
4 See Exhibit A, paras. 9, 17; Exhibit C, para. 12.

3

proposed loan and provided the refinery with Mr. Nicholas's contact information.[5]  On or about April 23, 2004, Mr. Booth, as he had been directed by Mr. Greaves, contacted Mr. Nicholas by telephone.[6]  Plaintiffs allege that Mr. Nicholas stated to Mr. Booth that Chase was not interested in pursuing the loan.[7]  Plaintiffs do not allege any other contact between Chase & Co. and the refinery.  Nor do the plaintiffs allege the existence of a confidentiality agreement between the parties that would have barred Mr. Nicholas from responding to Mr. Booth's inquiry.  On or after April 26, 2004, AMS was told by Mr. Nicholas that Chase was not going to go forward.[8]  AMS never filled out a Chase loan application.  Plaintiffs do allege that, on April 28, 2004, about five days after Mr. Greaves directed Mr. Booth to call Chase, Mr. Booth notified AMS that the refinery had executed an exclusive agreement with another potential buyer and was not pursuing the transaction with AMS.[9]

Thereafter, on May 7, 2004, AMS filed a letter complaint with the Federal Reserve alleging violations of the CRA and ECOA.[10]  On June 2, 2007, the Federal Reserve notified AMS that it would contact Chase on its behalf and advise AMS of its findings after review of the matter.[11]

On July 26, 2004, the Federal Reserve notified AMS that, in a letter from Ms. Sondra Matthews of Chase & Co.'s Executive Office, Chase & Co. advised that a loan of the size requested would require substantial assets.  Chase & Co. had reviewed public records, including Dun & Bradstreet, and found no information regarding AMS.  Chase & Co. also found that AMS was not licensed to do business in New York State and that the telephone number and address provided for

---

5 See Exhibit C, para. 14; Exhibit E.
6 See Exhibit C, paras. 14, 15.
7 See Exhibit C, para. 15.
8 See Exhibit C, para. 18.
9 See Exhibit C, para. 20; Exhibit F.
10 See Exhibit A, para . 28; Exhibit G.

4

the company could not be confirmed. Accordingly, Chase declined to pursue further discussions about an extension of credit to AMS.[12] The Federal Reserve advised AMS that a bank is allowed to set its own, nondiscriminatory criteria for creditworthiness.[13] On August 3, 2004, the Federal Reserve sent AMS a copy of Chase & Co.'s July 16, 2004, letter setting forth the reasons for the denial of credit.[14] Plaintiffs filed this action on August 3, 2007.

## ARGUMENT

### POINT I

**PLAINTIFFS' CLAIMS UNDER THE ECOA ARE BOTH TIME BARRED AND INSUFFICIENT AS A MATTER OF LAW.**

Where, as here, a plaintiff's complaint is filed more than two years after the alleged ECOA violation and fails to allege facts to support its claims of disparate treatment, the ECOA claim should be dismissed. 15 U.S.C.S. § 1691e(f) (2008). 15 U.S.C.S. § 1691e(f) provides:

> Jurisdiction of courts; time for maintenance of action; exceptions. Any action under this section may be brought in the appropriate United Stated district court without regard to the amount in controversy, or in any other court of competent jurisdiction. <u>No such action shall be brought later than two years from the date of the occurrence of the violation</u>, except that –
>
> (1) whenever any agency having responsibility for administrative enforcement under section 704 [15 USCS § 1691c] commences an enforcement proceeding within two years from the date of occurrence of the violation,
> (2) whenever the Attorney General commences a civil action under this section within two years from the date of the occurrence of the violation, then any applicant who has been a victim of the discrimination which is the subject of such proceeding or civil action may bring an action under this section not later than one year after the commencement of that proceeding or action.

---

11 <u>See</u> Exhibit H.
12 <u>See</u> Exhibit D.
13 <u>See</u> id.
14 <u>See</u> Exhibit C, para. 24; Exhibit I.

15 U.S.C.S. § 1691e(f) (2008) (emphasis added); see <u>Boykin v. Key Corp.</u>, No. 03-CV-9445, 2005 U.S. Dist. LEXIS 5546 (W.D.N.Y. Mar. 28, 2005).

There is substantial case law enforcing the two year limitations period for ECOA claims. For instance, in <u>Boykin</u>, an African-American woman alleged that she was denied a loan to repair real property that she owned in Buffalo, New York. She was told by a loan officer at the bank that her loan application was denied because she was not a resident of New York State. The plaintiff maintained that she was financially qualified for the loan and that the bank violated the ECOA, as well as other federal statutes. The court granted the defendant's 12(b)(6) motion on the grounds that plaintiff's ECOA claim was untimely because it was not commenced within two years of the alleged violations as required by the statute. Further, the court held that the plaintiff had failed to allege facts supporting her claim that the bank showed preference for non-protected individuals.

Similarly, in <u>McKay v. Sacks</u>, No. 05-CV-2307, 2005 U.S. Dist. LEXIS 43347 (E.D.N.Y. May 12, 2005), the plaintiff alleged that the defendant fraudulently induced her to take a high rate mortgage loan that was recorded as a lien against her home. The court dismissed the plaintiff's ECOA claim on the grounds that it was time barred having been commenced more than two years after "plaintiff knew or should have known of defendants alleged wrongdoing . . . ." <u>Id.</u> at *13.

In <u>Trakansook v. Astoria Federal Savings and Loan Assoc.</u>, No. 06-CV-1640, 2007 U.S. Dist. LEXIS 28679 (E.D.N.Y. Apr. 18, 2007), the plaintiff sought to amend her complaint to assert a cause of action under the ECOA, alleging discrimination based upon age, gender, and national origin. The court denied the plaintiff's motion to amend because the alleged ECOA claim was barred by the two year statute of limitations. The alleged ECOA violations occurred

6

in September 2002 and the plaintiff's federal court action was not commenced until April 2006.

See also Pierce v. Citibank (South Dakota), N.A., 856 F. Supp. 1451 (Dist. Or. 1994), aff'd, 92 F.3d 1193 (9th Cir. 1996) (dismissing ECOA claim as time barred where action commenced more than two years after plaintiff learned that bank had closed her credit card account); Ford City Bank v. Goldman, 424 N.E.2d 761 (Ill. App. Ct. 1981) (dismissing ECOA claim as time barred where alleged violation, i.e., requiring spouse to sign note, occurred more than two years before action commenced).

In this case, plaintiffs' ECOA claim was filed more than two years after the alleged 2004 ECOA violation. Plaintiffs acknowledge that AMS applied for a loan in March 2004 and admit that AMS received notice of the reasons that Chase declined to extend credit on July 26, 2004. AMS was so incensed by the refusal that it wrote a letter of complaint to the Federal Reserve. Yet, despite knowing that Chase had not extended the requested credit, AMS made no effort to pursue an ECOA claim within the statute-allowed time period. Accordingly, plaintiffs' ECOA claim, filed on August 3, 2007, is barred by the statute's two-year statute of limitations and should be dismissed.

The statute of limitations is not the only reason that AMS's ECOA claim should be dismissed. The courts have also dismissed ECOA claims on the pleadings where the plaintiff failed to allege facts to support a claim of discriminatory intent. In Powell, as in the case before this Court, the plaintiff made conclusory allegations of discrimination that she is a African-American and the lender "did not adequately consider her application" for credit. 310 F. Supp. 2d at 487. The plaintiff did not allege a specific policy to support a claim of discrimination, but complained that the lender's reliance on creditworthiness, was discriminatory to minorities. The court found the complaint insufficient as a matter of law, stating that the plaintiff had alleged "no

7

specific allegations as to exactly how Defendants subjected her application to additional scrutiny vis-a-vis non-minority loan applicants." Id. at 488.

In Anderson v. Capital One Bank, 224 F.R.D. 444, 446 (W.D. Wis. 2004), the plaintiffs alleged violations under the ECOA for "failing to communicate the source of its decision to deny plaintiffs' credit application . . . ." The court held, however, that the bank's explanation, i.e., that it denied their application because the person with the Social Security number of the primary applicant was reported to be deceased, was sufficient under the statute. The bank was not required to provide the source of its information to the plaintiffs. Accordingly, the court dismissed the complaint on the pleadings.

In Howard Oaks, Inc. v. Maryland National Bank, 810 F. Supp. 674 (Dist. Md. 1993), the court granted defendant's 12(b)(6) motion to dismiss an ECOA claim on the grounds that the plaintiff failed to allege a necessary predicate for liability, i.e., that plaintiff had submitted a "completed application" under 12 C.F.R. § 202.2(f). The plaintiff argued that the bank was supplied with information "in the forms of letters and documents." Howard Oaks, 810 F. Supp. at 677. The court held that the complaint was fatally defective because it did not allege that a completed application was submitted.

Plaintiffs' conclusory allegations of discrimination are not supported by factual allegations. Plaintiffs do not allege a specific policy to support a claim of discrimination. Plaintiffs allege that Chase's refusal to extend credit because AMS has no income or assets was wrongful because it was offering other forms of security. Plaintiffs, however, have failed to set forth facts to support its claim that Chase discriminated against plaintiffs vis-a-vis non-minority loan applicants. Furthermore, plaintiffs fail to allege that it submitted a "completed application," as required by the regulations. 12 C.F.R. §202.2(f) (2008). Plaintiffs allege only that AMS

8

supplied letters and documents to Chase. After receiving the letter, Chase reviewed public records regarding AMS and determined that it did not have sufficient income or assets to warrant consideration of a loan of the size requested. Chase did not provide written notice of its reasons for declining credit until July 16, 2004, because AMS had never formally submitted a completed application. Instead, AMS sought to expedite consideration of its request by going first to the Chairman and CEO of the bank's holding company and then to the Federal Reserve.

## POINT II

### PLAINTIFFS' ALLEGED TORTIOUS INTEREFERENCE CLAIM IS INSUFFICIENT AND BARRED BY THE APPLICABLE THREE-YEAR STATUTE OF LIMITATIONS

In order to establish a claim for tortious interference with prospective business, a plaintiff must prove that (1) there was a business relationship with a third party, (2) defendant knew about that relationship and intentionally interfered with it, *(3) defendant either acted solely out of malice or used wrongful means*, and (4) the alleged interference caused injury to the relationship. Masefield AG v. Colonial Oil Indus., 05 Civ 2231 (PKL), 2006 U.S. Dist. LEXIS 5792, at *25 (S.D.N.Y. Feb. 14, 2006) (emphasis added). Conduct is considered "wrongful" if it amounts to a crime or an independent tort, establishing that defendant is sufficiently culpable to be liable for the alleged injury. Masefield, 2006 U.S. Dist. LEXIS 5792, at *25-26; Carvel Corp. v. Noonan, 3 N.Y.3d 182, 190 (N.Y. 2004).

In addition, a claim for interference with pre-contractual relations is subject to a three-year statute of limitations. N.Y. C.P.L.R. 214 (2008). The statute of limitations accrues on the date the alleged injury to the relationship occurs. Radin v. Albert Einstein College of Medicine of Yeshiva Univ., 04 Civ. 704 (RPP), 2005 U.S. Dist. LEXIS 9772, at *51-52 (S.D.N.Y. May 20, 2005) (holding that an action for interference with pre-contractual relations was time barred where the

9

alleged damaging letter was sent more than three years before the commencement of the action).

Here, plaintiffs allege that Chase damaged its relationship with the refinery on or about April 23, 2004,[15] when Mr. Booth who had contacted Mr. Nicholas at Mr. Greaves' insistence, learned that Chase was not funding a loan to AMS. It is undisputed that Mr. Greaves of AMS authorized Mr. Booth to make this contact for the sole purpose of discussing AMS's claim that Chase was providing financing for the refinery purchase. Plaintiffs allege that Mr. Nicholas told to Mr. Booth that Chase was not interested in pursuing the loan, which was true. Plaintiffs do not allege any other contact with Mr. Booth or the refinery. Since plaintiffs' do not allege any wrongdoing by Chase, plaintiff's claim for tortious interference is insufficient as a matter of law and should be dismissed. See Masefield, 2006 U.S. Dist. LEXIS 5792, at *25-29.

Further, even if plaintiffs had pleaded a claim for tortious interference, that claim was untimely filed. This action was commenced on August 3, 2007, more than three years after the alleged injury to the relationship occurred on April 23, 2004. Accordingly, the alleged tortious interference claim is time barred. See Radin, 2005 U.S. Dist. LEXIS 9772, at *51-52.

### POINT III

**DONALD GREAVES AND SAINT CLAIR JACKSON ARE IMPROPER PARTIES BECAUSE INDIVIDUALS DO NOT HAVE STANDING TO ASSERT CLAIMS ON BEHALF OF A CORPORATION.**

It is well settled that where a corporation is allegedly wronged by the acts of others, it is the corporation, not the individual shareholders, which has a cause of action. Green v. Victor Talking Mach. Co., 24 F.2d 378, 380 (2d Cir. 1928); Bank Saderat Iran v. Zandi, 94 Civ. 7229 (SHS), 1996 U.S. Dist. LEXIS 8429, at *3-4. A shareholder can commence a derivative action on behalf of the

---

15 See Exhibit A, para. 39; Exhibit C, para. 15.

corporation, pursuant to Federal Rule of Civil Procedure 23.1, only if the corporation has failed to assert the claim itself.

Here, the corporation is a plaintiff in this action. Accordingly, plaintiffs, Donald Greaves and Saint Clair Jackson, principals of AMS, are not entitled to bring this action, having no standing to sue on behalf of AMS. The Verified Amended Complaint, moreover, does not allege facts stating claims on behalf of the individual plaintiffs.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that the Verified Amended complaint be dismissed on the grounds that (a) plaintiffs' Equal Credit Opportunity Act ("ECOA"), 15 U.S.C.S. § 1691 et seq., claim is barred by the statute's two-year statute of limitations and is insufficiently pleaded, (b) plaintiffs' tortious interference claim is barred by the applicable three-year statute of limitations, (c) individual plaintiffs, Donald Greaves and Saint Clair Jackson , do not have standing to assert claims for alleged wrongs to the corporation and are, therefore, improper parties.

Dated: April 1, 2008
New York, New York

>Respectfully submitted,
>
>Cullen and Dykman LLP
>Attorneys for Defendant
>JPMorgan Chase Bank, N.A.
>s/h/a JP Morgan Chase
>
>
>By: _____/s/_____
>   Cynthia Boyer Okrent (CO-9233)
>   44 Wall Street, 17th Floor
>   New York, New York 10005
>   cokrent@culldyk.com
>   (212) 732-2000