UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

AMS GROUP, et al.,

        Plaintiffs,

   -v-                                                               No.  07 Civ. 6988 (LTS)(HBP)

JP MORGAN CHASE BANK,

        Defendant.

----------------------------------------------------------x

### MEMORANDUM ORDER

In this Equal Credit Opportunity Act ("ECOA") and tortious interference action, Plaintiffs AMS Group LLC ("AMS"), which characterizes itself as a now-defunct minority-owned and controlled business, and its principals Donald Greaves and Saint Clair Jackson (with AMS, "Plaintiffs"), allege that Defendant JP Morgan Chase Bank, N.A. ("Chase" or "Defendant") unlawfully discriminated against them by refusing to lend them $135,000,000 for the acquisition of an oil refinery in Texas.  Plaintiffs also allege that Defendant damaged their relationship with the Texas oil refinery by alerting a representative of the refinery that it had refused to fund the loan to Plaintiffs.  Defendant moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Amended Complaint.  In light of the parties' reliance on materials outside of the Amended Complaint in their moving and opposition papers, the Court issued an Order informing the parties that the motion would be treated as one for summary judgment, and gave the parties an opportunity to make further submissions.  (Docket entry no. 39.)

The Court has jurisdiction of Plaintiffs' federal causes of action pursuant to 28 U.S.C. § 1331, among other provisions, and supplemental jurisdiction of the state law claims pursuant to 28 U.S.C. § 1367.

BACKGROUND

The following material facts are undisputed unless otherwise indicated. On or about March 16, 2004, AMS, through its principal Donald Greaves, wrote a letter to Defendant's Chairman requesting that Defendant consider lending AMS $135,000,000 in connection with the purchase an oil refinery in Texas. (Parker Aff., Apr. 30, 2008, Ex. B.) Mr. Greaves' letter was forwarded to one of Defendant's employees. By letter dated April 23, 2004, Plaintiffs invited a representative of the Texas refinery to contact Defendant to inquire as to the status of the proposed loan. (Okrent Aff., Apr. 1, 2008, Ex. E.) Defendant informed the representative that it was not willing to make the requested loan and the refinery's representative communicated the news to Mr. Greaves on or about April 28, 2004. (Greaves Aff., Apr. 30, 2008, ¶ 9 (attached as Ex. A to Parker Aff.)); (Okrent Aff., Apr. 1, 2008, Ex. F.) In the communication to Mr. Greaves, the representative also informed Mr. Greaves that the refinery had executed an exclusive arrangement with another buyer based on its understanding that AMS would not be receiving the loan from Defendant. (Okrent Aff., Apr. 1, 2008, Ex. F.)

On May 7, 2004, AMS, through Mr. Greaves, filed a complaint with the Federal Reserve Bank of New York (the "Federal Reserve") alleging that Defendant had violated the ECOA by refusing to fund its purchase of the refinery. (Okrent Aff., Apr. 1, 2008, Ex. G.) On or about July 26, 2004, the Federal Reserve notified AMS via a letter of its findings relating to

Defendant's refusal to provide the requested loan.  The letter noted that "[a] loan of [AMS' requested] size would require substantial assets [and] Chase has reviewed public records . . . and has found no publicly available databases that include a listing of [AMS]."  (Id., Ex. D.)  The letter continued:

> Additionally, these databases indicate that AMS Group LLC is not licensed to do business in the State of New York, the telephone number provided for your company is unlisted, and the address provided for the company does not contain a listing for the company.  Accordingly, Chase is unable to proceed with your request for credit.

(Id.)  Mr. Greaves acknowledges that Plaintiffs received the Federal Reserve's letter.  (Greaves Aff., Apr. 30, 2008, ¶ 11.)  On August 3, 2004, the Federal Reserve, at Mr. Greaves' request, sent Plaintiffs a copy of Defendant's July 16, 2004, response to AMS' May 7, 2004, complaint.  (Okrent Aff., Apr. 1, 2008, Ex. I.)  Plaintiffs filed this action on August 3, 2007, and allege that, up to and at the time they filed this action, they were unaware of the statutes of limitations applicable to their causes of action.  (Greaves Aff., Apr. 30, 2008, ¶ 15.)

DISCUSSION

Summary Judgment Standard

Summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure is to be granted in favor of the moving party when "the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of establishing that no genuine issue of material fact exists.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  As the Second Circuit has explained, it is not

enough for the party opposing summary judgment to show that "'some metaphysical doubt as to the material facts'" exists.  Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).  The nonmoving party must proffer specific facts showing the existence of a genuine issue for trial.  Id.  "[M]ere conclusory allegations, speculation or conjecture," will not provide a sufficient basis for a non-moving party to resist summary judgment.  Cifarelli v. Vill. of Babylon, 93 F.3d 47, 51 (2d Cir. 1996).

ECOA Claims

Defendant argues that Counts One and Two of Plaintiffs' Amended Complaint must be dismissed because they are untimely under the ECOA.  Plaintiffs argue primarily that Defendant's motion should be denied because Plaintiffs' principal, Mr. Greaves, is not an attorney and was not represented by counsel during the events leading up to this dispute, and because Plaintiffs were unaware of the relevant statutes of limitation.

ECOA prohibits a "creditor" from discriminating against an applicant "with respect to any aspect of a credit transaction" based on "race, color, religion, national origin, or marital status, or age."  15 U.S.C.A. § 1691(a) (West 1998).  The term "credit transaction" encompasses "every aspect of an applicant's dealings with a creditor regarding an application for credit or an existing extension of credit (including, but not limited to, . . . revocation, alteration, or termination of credit)."  12 C.F.R. § 202.2(m); Trakansook v. Astoria Federal Savings and Loan Association, No. 06 Civ. 1640 (SMG), 2007 WL 1160433, *8 (E.D.N.Y. Apr. 18, 2007).  The term "person" means a natural person, a corporation, government or governmental

subdivision or agency, trust, estate, partnership, cooperative, or association." 15 U.S.C.A. § 1691a(f) (West 1998).

ECOA provides that no action based on an alleged violation of the statute "shall be brought later than two years from the date of the occurrence of the violation." 15 U.S.C.A. § 1691e(f) (West 1998). Courts have relied on the federal discovery rule in ECOA cases for the proposition that the statute of limitations runs from the time that a plaintiff knew or should have known that it was being discriminated against on the basis of race. Jones v. Ford Motor Credit Co., No. 00 Civ. 8330 (LMM), 2002 WL 88431, *5 (S.D.N.Y. Jan. 22, 2002).

Plaintiffs allege that they were discriminated against by Defendant in a credit transaction on the basis of their status as an African-American owned and operated business. The alleged violation in this case occurred on or about April 28, 2004, when Plaintiffs were put on notice of Defendant's refusal to extend them the requested credit. The record demonstrates that Plaintiffs were aware of the alleged violation no later than May 7, 2004, when they subsequently filed their three-page complaint with the Federal Reserve detailing their allegations of Defendant's racial discrimination and ECOA violations.

While courts have held that the limitations period for ECOA actions is subject to equitable tolling in instances of fraudulent concealment, the facts alleged here do not set forth any basis for such tolling. See McKay v. Sacks, No. 05 Civ. 2307 (SJF), 2005 WL 1206810, *5 (E.D.N.Y. May 20, 2005). Moreover, Plaintiffs allegation that it was unaware of the statute of limitations in light of the Federal Reserve's failure to, subsequent to its letter informing Plaintiffs of its findings, institute an administrative closure of AMS' complaint and thereby put AMS on notice that the Federal Reserve proceedings had concluded is unavailing. The initiation of

administrative proceedings is not sufficient to toll a limitations period.  See Higgins v. New York Stock Exchange, Inc., 942 F.2d 829, 834 (2d Cir. 1991).  Furthermore, since the ECOA does not require that a person exhaust remedies with the Federal Reserve prior to bringing a court action, AMS' anticipation of or expectation of an administrative closure by the Federal Reserve of its complaint is not an appropriate ground for equitable tolling.  See Hizbullahankhamon v. Walker, 255 F.3d 65, 75 (2d Cir. 2001) (holding that to equitably toll a limitations period, a party "must show that extraordinary circumstances prevented him from filing his [complaint] on time.")  Additionally, as to Plaintiffs' argument that equitable tolling is appropriate because Defendant failed to give clear grounds for its loan rejection and because Defendant failed to advise Plaintiffs timely of their rights pursuant to the ECOA, it is undisputed that the refinery's representative notified Plaintiffs before May 2004 that Defendant was not willing to make the requested loan and that the refinery had executed an exclusive arrangement with another buyer based on its understanding that AMS would not be receiving the loan.  Therefore, on the undisputed facts of the case, there can be no rational inference that Plaintiffs were misled into waiting to assert their rights in this forum.

Finally, Plaintiffs' proffered ignorance of the law is not a sufficient basis for tolling the statute of limitations.  See Wong v. Healthfirst, Inc., No. 04 Civ. 10061 (DAB), 2006 WL 2457944, *2 (S.D.N.Y. Aug. 23, 2006) (holding that "[m]ere ignorance of the law does not warrant equitable tolling of a statute of limitations"); see also Fennell v. Artuz, 14 F. Supp. 2d 374, 377 (S.D.N.Y. 1998) (holding that a plaintiff's unfamiliarity with legal research and legal proceedings do not warrant equitable tolling).

Accordingly, Defendant's motion to dismiss Counts One and Two of the Amended Complaint is granted.

Tortious Interference Claim

In their tortious interference with prospective business claim, Plaintiffs allege that Defendant improperly contacted a representative of the refinery and released to it confidential information concerning Plaintiffs, thereby preventing Plaintiffs from acquiring the refinery.[1]

In order to establish a claim for tortious interference with prospective business, a plaintiff must prove that: (1) there was a business relationship with a third party; (2) the defendant knew about that relationship and intentionally interfered with it; (3) the defendant either acted solely out of malice or used wrongful means; and (4) the alleged interference caused injury to the relationship.  Masefield AG v. Colonial Oil Indus., 05 Civ. 2231 (PKL), 2006 WL 346178, *8 (S.D.N.Y. Feb. 15, 2006).  New York law applies to Plaintiffs' tortious interference claim because the conduct allegedly constituting unlawful interference occurred in New York.  See White Plains Coat & Apron Co., Inc. v. Cintas Corp., 460 F.3d 281, 284 (2d Cir. 2006).  Under New York law, such a claim is subject to a three-year statute of limitations running from the date of the injury.  Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ., No. 04 Civ. 704 (RPP), 2005 WL121481, *14 (S.D.N.Y. May 20, 2005); N.Y. C.P.L.R. § 214(4).

This case was filed on August 3, 2007.  Thus, any claims against Defendant for acts prior to August 3, 2004, are time barred.  Plaintiffs' allegations of tortious interference with prospective business are premised upon acts committed by Defendant leading up to and including its refusal to extend credit to Plaintiffs in or around April or May 2004.  As explained above,

---

[1] As noted above, it is undisputed that Plaintiffs expressly invited a representative of the refinery to contact Defendant and inquire as to the status of Plaintiffs' loan application, and that Defendant refused to lend AMS the funds necessary to acquire the refinery.  (See Okrent Aff., Apr. 1, 2008, Ex. E.)

based on information communicated to it by Chase, not to do business with AMS. Accordingly, Defendant's motion to dismiss Count Three of the Amended Complaint as untimely is granted.

## CONCLUSION

Defendant's motion for summary judgment is granted in its entirety. The Clerk of Court is respectfully requested to enter judgment dismissing the Amended Complaint and close this case. This Memorandum Order resolves docket entry no. 28.

SO ORDERED.

Dated: New York, New York
August 15, 2008

_____
LAURA TAYLOR SWAIN
United States District Judge